### CARTER v. BLOODGOOD'S EXECUTORS and others.

A testator having a son and five daughters, all infants, gave the residue of his estate to trustees, with directions to pay the annual income to his six children in equal proportions during their lives, and at the death of either of them without lawful issue, his or her share to continue as a part of the residue, the income of which was to be equally divided among the *surviving children*; and if either of his children should die leaving issue, his or her share should be equally divided among his or her children. One daughter died without issue, then another died leaving one child, a son, and then two other daughters died without issue ;

*Held*, that the words *surviving children*, were to be construed " *other children*," and that the son of the deceased daughter was equally entitled to share with the testator's surviving children, the proportions of the daughters who died after the decease of his mother.

The word " survivors " may be construed " others," upon the context and the other clauses of the will, showing the intent of the testator.

And the court will supply words to support the intent, when that is apparent upon the whole of the will taken together.

In the principal case, the bequest over to the grand-children, in the shares of the children who died without issue, whether before or after the death of the parents of such grand-children, is raised by implication from the testator's general intention.

A decision on a point of law, in a former case, between the same parties in the same court, is not an estoppel, or conclusive ; but it is binding upon the same court, though held by another judge, unless the latter be clearly and strongly convinced of its error.

November 15, 1845 ; February 21, 1846.

THE bill was filed in May, 1844, by James Bloodgood Carter, an infant, by his father as his next friend, against Thomas Tom Bloodgood and Lindley Murray Moore, surviving executors of James Bloodgood, deceased, and Frederick J. Goodwin and Catharine T., his wife. The bill stated that James Bloodgood, on the

10th of October, 1826, made his last will and testament with all the formalities required by law ; and thereby, after giving a legacy of $2500 to each of his five daughters on their attaining to lawful age, and $5000 to his son Thomas T., on his attaining to lawful age, and $5000 more when twenty-five years of age, he directed as follows : "Seventhly. I order and direct my executors to place out all the residue of my estate, either in good mortgage security, or invest it in the public funds of the United States, or in those of the state of New York, and to pay the annual income and interest arising therefrom, in yearly or half-yearly payments, as my executors may see fit, to my five daughters, Catharine Tom Bloodgood, Anna Lawrence Bloodgood, Mary Titus Bloodgood, Sarah Tom Bloodgood, and Susannah Bloodgood, and my son Thomas Tom Bloodgood, in equal proportion during their natural lives ; and at the death of either of them without lawful issue, his or her share is to continue to be a part of the residuary estate, the income of which is to be equally divided among the surviving children ; and in case either of my children should die leaving lawful issue, his or her part shall be equally divided amongst his or her children, and if in minority, to their guardians, legally constituted and appointed."

That the testator died, October 18th, 1826, leaving surviving him the six children named in the will, all of whom were minors. His estate at his death, was about one hundred thousand dollars.

Sarah, one of his daughters, died March 13th, 1835, while under age, unmarried, intestate, and without issue.

Mary, another daughter, was married, November 10th, 1836, to William Henry Carter. The complainant, the only issue of the marriage, was born August 19th, 1837, and his mother died intestate, April 20th, 1839.

Frederick J. Goodwin married Catharine, another daughter, May 8th, 1838; and Joseph King married the testator's daughter Anna, on the 1st of April, 1839. The remaining daughter, Susannah, died April 30th, 1840, intestate, unmarried, without issue, and an infant.

Robert Carter was appointed administrator of Mrs. Mary T.

Carter, and in November, 1840, with the complainant, filed a bill in this court, against the executors of James Bloodgood, and his surviving children, together with F. J. Goodwin and J. King; insisting that the complainant was entitled to one equal fourth of the testator's residuary estate.

The executors put in an answer, denying his right, and the cause came on to be heard before the Hon. Murray Hoffman, Assistant Vice-Chancellor, who made a decree on the 23d of December, 1841, directing the accounts of the estate to be taken. And afterwards on the 13th of March, 1843, on the master's report, he made a further decree, establishing the complainant's right to the one-fourth part of the residuary estate.

That in October, 1843, the testator's daughter, Anna L. King, died intestate and without issue; and the complainant insisted that he was entitled to one equal third of the fourth part of the residuary estate, of which Mrs. King received the income while living. The bill insisted on the decision of the court in the prior suit, as establishing the complainant's right.

The defendant, Thomas T. Bloodgood, executor, &c., alone answered the bill, and admitting the facts charged; insisted that the complainant was not entitled to any portion of either the capital or income of the fourth part of the residuary estate of which Mrs. King received the income during her life; and submitted the question thereon to the court. He alleged that he was not a party in his own right, either in this suit or the former one.

*M. S. Bidwell,* for the complainant.

*D. Lord,* for the defendants.

THE ASSISTANT VICE-CHANCELLOR.—The same question was presented in the former suit, that has been argued here, and the decree decides that question. It was however, a point of law, involving no contested fact, and this suit relates to other property. I am not prepared to say that the decree was an estoppel, or that it concludes the defendants from contesting the construction of the will, in another suit relating to a different share of the es-

tate.   But as a decision of the law upon the identical point, by this court on a former occasion, I feel bound to follow it, unless on examining the case I am clearly and strongly convinced that it was erroneous.

The defendants insist that by the will, the income of the testator's residuary estate is given to his six children collectively, and to the survivor of those children, the whole capital to remain in the executors, until the death of all his children.   That on the death of each child of the testator, such child's proportion is given to its issue, as a legacy at that time.   If such child leave no issue, its share goes to the testator's surviving children, excluding the issue of children who have died previously.   And that the legacy to the issue of children, carries only the share or part of which the parent received the income at such parent's decease.

The effect of the defendants construction, applied to the events which have occurred, is this.

On Sarah T. Bloodgood's death in 1835, without issue, her sixth part remained in the residuary estate for the benefit of the five surviving children of the testator.   On the death of the complainant's mother in 1839, the one fifth part of the residuary estate, vested in the complainant.   When Susannah Bloodgood died in 1840, without issue, her fifth part continued in the residuum, for the benefit of the testator's three surviving children, excluding wholly the issue of Mrs. Carter ; and so of Mrs. King's fifth part on her death, without issue in 1843.   And thus the two survivors, Mrs. Goodwin and T. T. Bloodgood, are entitled to the income of four fifths of the whole residuary estate, during their lives, and their issue if they die leaving issue, will take four fifths of such residue absolutely, leaving the other fifth to the complainant.   If Mrs. Goodwin die before her brother, he will then take the income of the whole estate during his life, and if she die without issue, his children on his death will have four fifths of the property, and the complainant one fifth.

The construction insisted upon in the answer, (which goes further than was contended at the hearing,) will be further illustrated by supposing a different state of things which might have oc-

curred.   If Thomas T. Bloodgood had died in 1839, before either of his sisters, and had left issue four children, and then all the sisters had died, save Mrs. Carter; Mrs. Carter would at this time have had the whole income of the estate, and continued to enjoy it during her life, which might have continued twenty years.   At her death, her son would take five sixths of the estate absolutely, and the four children of T. T. Bloodgood, after having gone through their entire minority, without any income whatever, would then jointly take the remaining one sixth.

I should mention, that the actual result has been varied, by the decree in the former suit, as to the shares of Sarah and Susannah ; but that decree was contrary to the construction claimed. The statement of the effects of the will, when thus construed, operating upon the contingency of one or the other, of the testator's children dying before the rest, and leaving issue, must satisfy every person who reads this will, that such was not the intention of the testator.

In the various specific legacies which he gave to his children, in the previous portions of the will, he evidently made all the distinction, and indulged all the partiality, which he intended to make or exhibit, amongst the different branches of his family. The residuary clause makes no distinction whatever. The grossly unequal distribution which might ensue from the defendant's construction, is the work of chance ; and the distressing consequences might as well have been visited upon the family of the testator's only son, as upon the issue of either of his daughters.   The residuary clause shows that he had the issue of his children in view, and that he intended to provide for them without any distinction, or preference, except the natural one, that the issue of each of his children, whether more or less numerous, should receive their parent's share.

I think that the true construction of the will, does not sustain the defendants claim.   The words " surviving children," are mainly relied upon, to exclude the complainant from any participation in the shares of those of his aunts who have died since his mother's death.   And it is not to be denied, that the literal signification of those words, leads directly to that result.

Mr. Powell says, it is now settled, after some fluctuation of authority, that where property is given to a plurality of persons, with a devise or bequest over in certain events, of the shares of dying objects to the survivors, the word " survivors" is construed *others*, so that as well those who die before, as those who survive the objects in question, are entitled ; provided of course, that their deaths did not happen under circumstances, which subjected their shares to the operation of the limitation over. And he puts the case of a bequest over to the survivors, on one dying under twenty-one years of age ; the share of one so dying, he says, will vest in the persons surviving, and in the representatives of those who have previously died, after having attained that age. (2 Powell on Devises, by Jarman, 723.)

Such was the decision, by Lord Eldon, in *Wilmot* v. *Wilmot*, (8 Ves. 10,) and it has the sanction of Sir William Grant's opinion expressed in strong terms, in *Barlow* v. *Salter*, (17 Ves. 482.)

In *Harmon* v. *Dickinson*, (1 Bro. Ch. Ca. 91, and note 1,) which is cited as supporting this doctrine, the bequest was to two persons, and when the second died without issue, there was no person answering the description of " survivor," except the children of the other legatee, who had died previously. This must have been the ground of Lord Thurlow's decision, because in the same year, (1781,) in *Ferguson* v. *Dunbar*, (3 Bro. Ch. Ca. 469, note,) where under a similar will, there was a surviving legatee, as well as children of one who had died before the legatee whose share was in question, he decreed the whole to the surviving legatee. The case of *Aiton* v. *Brooks*, (7 Simons, 204,) was like *Harmon* v. *Dickinson*, in the circumstance above stated.

On the other hand, in *Crowder* v. *Stone*, (3 Russell, 217,) the bequest after two life interests, was to the testator's nephew, and four nieces equally, but in case of the death of either of them *without* lawful issue, before their shares became payable, then the share of such decedent should go to, and be equally divided, between and amongst the survivor and survivors of them, share and share alike. M. one of the nieces, died in 1797, leaving issue, and another niece G. died, in 1802, without issue. Lord

Lyndhurst held that the representatives of M. took no interest in the share of G. (And see *Winterton* v. *Crawfurd*, 1 R. & Mylne, 407; *Ranelagh* v. *Ranelagh*, 2 M. & K. 441; and *Leeming* v. *Sherratt*, 2 Hare, 14.)

Indeed, Mr. Jarman, in his recent valuable treatise on wills, says the rule is now settled, that the word " survivors" when unexplained by the context of the will, must be interpreted according to its literal import. (2 Jarm. on Wills, 609, 619.) And this seems to be the result of the English authorities.

Tested by this more restricted rule of construction, I think the context, and the other provisions in the will of Mr. Bloodgood to which I have already referred, do explain the meaning of surviving children, in this clause of the will, to be " the others ;" that is, his own children living, and the children of his deceased children. And that he intended by his residuary bequest, to put each branch of his family, on a footing of exact equality, giving life interests to his children, and the capital to their respective issue, *per stirpes.*

The bequest over to the grand children, in the shares of the children who die without issue, is raised by implication, from the same provisions in the will, which establish the testator's intention to make an equal distribution of the residue. (See 1 Jarm. on Wills, 499, 500.)

There is another rule in the construction of wills which leads me to the same conclusion.

The governing principle, is the intention of the testator, and when that is apparent upon the whole will taken together, the court must give such a construction, as to support the intent, regardless of grammatical rules, and sometimes by supplying words and limitations. As instances of inserting words in order to equalize estates, where the testator has expressed uniformity of purpose, thereby effectuating the intention, as collected from the context, I refer to *Langston* v. *Pole*, (2 Moo. & Payne, 490,) and *Doe d. Wickham* v. *Turner*, (2 Dow. & Ryl. 398.)

In *Pond* v. *Bergh*, (10 Paige, 140, 152,) the testator devised certain lands to his son Abraham, other lands to his son Philip, and other portions to his five daughters, and he gave some lands to the two sons jointly. His will then provided, that if one of

his sons, or if both of them, should die without issue, the testator thereupon gave the part or share, so devised unto either of them, unto the *surviving son*, and the five daughters in equal portions forever. And if both the sons died without issue, their shares were to go to the five daughters. Philip survived the testator fifty years, and then died without issue ; Abraham and the five sisters, having died in Philip's life time, leaving issue. The question was whether Abraham's issue should inherit one sixth of Philip's share. The Chancellor, on the evident intention, derived from the will, held that they should ; and construed the will, as if the words " or the son who has died and left issue, who are then living," had followed the words " unto the surviving son" in the will itself.

These authorities warrant me in construing this will as if the words " and the issue of such of my children as are then dead, such issue taking their parent's proportion," had followed the expression " surviving children," in the clause in question. This gives effect to the undoubted intention of the testator, as it is exhibited by the whole will, and does no injustice to any of the objects of his regard ; and I adopt it without hesitation.

The former decree accords with the result of my examination of the bequests, but I am not informed of the particular grounds upon which it proceeded.

As to parties, my impression is, that Thomas T. Bloodgood ought to have been a party in his individual as well as his representative capacity, and that the other grandchildren of the testator, if any there be, should also have been parties.

The bill may stand over to make these persons parties, and the question of costs will be reserved. If the complainant desire it, there may be a declaration of his rights, as against the executors and the other defendants.