HELEN M. RIDGELY *vs.* JOHN RIDGELY OF HAMPTON, ET AL.

*Construction of a Will—Time of Vesting of Remainders.*

Testator devised the residue of his estate to his wife during her life or widowhood, and then bequeathed one-half of the personal property, upon the death or remarriage of his wife, "unto all my surviving children, male as well as female * * and unto the issue female of such of my said sons as may have died previous to the demise of my wife * * if there be any issue female or the survivors of them in equal shares." Seven children survived the testator. In the lifetime of his wife, one son, Charles, died intestate and unmarried, and another son, Howard, died leaving a wife but no issue, and then testator's widow died. *Held*, that the testator's sons took vested estates in their shares of this property at the time of his death, defeasible upon the death of any son, in the lifetime of the widow, leaving female issue; in which issue his share would then vest; that since Howard died before his mother and left no issue his share was not divested but passed to his legal representatives, and that upon the death of Charles his share passed to his brothers and sisters.

Appeal from the Circuit Court for Baltimore County BURKE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*George Whitelock* and *Edward I. Koontz* (with whom was *John B. Deming* on the brief), for the appellant.

*Charles McH. Howard* (with whom was *McHenry Howard* on the brief), for the appellees.

PAGE, J., delivered the opinion of the Court.

This appeal brings before us for construction the last will and testament of the late Charles Ridgely of Hampton.

After bequeathing pecuniary legacies to his several sons, and bestowing all his real and personal estate upon his wife, Margaret Sophia Ridgely, for her life or during her widowhood, he devised his real estate, after the death or remarriage of his widow, among his children, and bequeathed his personal estate in the clause, upon the proper construction of which this controversy arises, as follows, viz: "And with respect to the whole of my personal property, except such portion as I have heretofore already disposed of and bequeathed I do direct that the same shall, upon the demise of my said wife, Margaret Sophia Ridgely; or upon her marriage should she contract a marriage after my decease, be assessed, and I do devise and bequeath half the amount or sum of such assessment, being in fact one-half the actual value of all my said remaining personal estate, upon the demise of my said wife, Margaret Sophia Ridgely, or upon her marriage, &c., unto to my son, John Ridgely, and in event of the demise of my said son, John, without issue male, then unto my said son, Charles Ridgely, and in the event of the demise of both my sons, John and Charles, without issue male, then unto my said son, Howard Ridgely, and in the event of the demise of my sons, John, Charles and Howard, without issue male, then unto my said son, Otho Eichelberger Ridgely. And as for and respecting

all the rest of my property and estate, real as well as personal, and wherever situated, invested or found, I do devise and bequeath the same, upon the demise of my said wife, Margaret Sophia Ridgely, or upon her marriage should she contract a marriage after my decease, unto all my surviving children, male as well as female, save and except my eldest surviving son, or such son as may take the hereinbefore last-mentioned legacy, and unto the issue female of such of my said son or sons who may have died previous to the demise of my said wife, or previous to her marriage, should she contract a second marriage after my decease, if there be any such issue female or the survivor or survivors of them in equal shares or proportions share and share alike, and I do hereby appoint them my said surviving children and the issue female of any of said son or sons who may have died previous to the demise of my said wife, Margaret Sophia Ridgely, or previous to her marriage should she contract a marriage after my decease, if there be any such issue female my residuary legatees."

The testator died in 1872, leaving surviving him a widow, Margaret Sophia Ridgely (who died in the year 1904, without having re-married), and seven children.

Of his children, three daughters and two sons, John and Otho, still survive. One of his sons, Charles Ridgely, Jr., died in 1873, intestate and without wife or child; another, Howard, died in 1900, leaving a widow but no issue.

The bill was filed by the daughters of the testator and the husband of one of them to obtain a construction of the will, as to whether Helen M. Ridgely, widow, executrix and devisee under the will of Howard Ridgely, deceased, is entitled to any part of the personal property of the testator under his will. The Court held she was not so entitled either individually, or as executrix or devisee, and awarded distribution of the property to be made among the surviving children of the testator. From this decree Mrs. Helen Ridgely individually and as executrix has appealed.

The contention of the parties respecting the proper construction of the clauses of that portion of the will which has

been cited is as to the period of time when the part of the res-
idue of the estate therein referred to vested.    The appellant
contends that the period of vesting must be taken to be the
time of the death of the testator, the estate liable however to
become divested on the death of each son leaving female issue.
On the part of the appellee, it is insisted the words "surviving
sons," must be referable to the period of distribution, that is,
to the death or re-marriage of the widow, Mrs. Sophia
Ridgely, and that therefore Howard Ridgely not having sur-
vived his mother, never had any interest except a contingent
one in the estate, and that his widow has now no interest in
and is not entitled to any part of the estate; and that this con-
clusion is in harmony with established precedents of this
State and with the intention of the testator, as expressed in
the instrument.

It is now well settled in this State as a rule of general ap-
plication to the construction of wills that when a gift is made
for life, and then over to survivors, the period of survivorship
is to be referred to the period of distribution, and not to the
death of the testator.    *Engel* v. *Geiger*, 65 Md. 539; *Ander-
son* v. *Brown*, 84 Md. 261; *Slingluff* v. *Johns*, 87 Md. 273;
*Small* v. *Small*, 90 Md. 550; *Wilson* v. *Bull*, 97 Md. 128.

But the testator may, if he choose, fix otherwise the period
of vesting; and when he has fixed upon the happening of a
contingency, the estate will not vest until such contingency
happens.    *Larmour* v. *Rich*, 71 Md. 369.

In determining whether the testator has done so, must depend
upon the intention of the testator, to be gathered from the words
of the will, interpreted in the light of all the circumstances proper
to be considered; and if such intention of fixing a particular
period of vesting can be determined with reasonable certainty,
it must be given effect, unless to do so would conflict with
some settled principle of law or rule of construction.    *Idem ;
Mercer* v. *Safe Deposit Co.*, 91 Md. 114; *Crisp* v. *Crisp*, 61
Md. 152.

In the last case, just cited, the Court said, "The law favors
the vesting of estates, and to make an estate contingent it

must appear from the language used and the nature and circumstances of the case that the time of payment was made the substance of the gift." And from the same case: "Estates will be held to be vested whenever it can be fairly done without doing violence to the language of the will, and to make them contingent, there must be plain expressions to that effect, or such intent must be so plainly inferable from the terms used, as to leave no room for construction." These words were cited approvingly in the other case also just cited.

The testator was possessed of a large estate consisting of both real and personal property. He gave to each of his sons a legacy of $20,000, and to his widow all the rest of his property both real and personal, during her life or widowhood. Subject to these legacies and devises, the Hampton property (described in the will) and one-half of his personalty was to go to the eldest son, and the remaining half of the personalty and the remainder of the real estate, were to be divided among his other children. Such a division would seem to indicate that the testator had two objects mainly in view, 1st, to provide that his home estate Hampton should be owned by his eldest son, and his male issue with means sufficient to support and maintain it; and 2ndly, otherwise to observe a strict equality among his other children. There is nothing in the instrument or before us to show that he indulged in personal preferences among his children. The grant to the oldest son does not appear to have been actuated by a desire to prefer him, or give him any advantage, but from a strong desire to carry out his views respecting Hampton. Subject to this scheme, the will discloses no partiality for any particular son or daughter. So that, if in the examination of the will, any construction that might not preserve this equality, will not commend itself, and ought to be rejected, if it be possible to do so, while giving proper effect to the language of the instrument. After the pecuniary legacies to his four sons and the devise to his wife, for life or widowhood, the testator devised the Hampton estate, including the house and the land described as the home farm, embracing one thousand acres, to his eldest son John; but if

he should die without leaving male issue, then to Charles; and should he die without male issue, then to Howard; and if he died without male issue, then to Otho; and should all of his said sons depart this life without leaving male issue, them surviving or any of them, then to trustees for the benefit of his three daughters in the shares specifically set forth.    The remaining portion of the Hampton estate he devised to his three sons, Charles, Howard and Otho in equal shares, and in the event of any of them dying intestate and unmarried, the share or shares of such son or sons to go to all his "surviving children male as well as female in equal proportions."    Other real estate he devised specifically to trustees in trust for his three daughters, or the survivor or survivors of them, the estate to go to *all* the testator's surviving sons, in the event of the death of all of them intestate and unmarried.    That John took a vested estate under these provisions of the will seems not to have been questioned at the argument.    The terms of the grant to him were without any limitation whatever.    It depended upon the happening of no contingency, for though the possession of it was deferred until the re-marriage or death of the widow; the latter event was certain, with "no element of contingency about it."    *Cox* v. *Handy,* 78 Md. 122.

But the estate was liable to be divested upon his death without leaving male issue, and in that event it passed to the next eldest son who held it subject to the same executory devise. *Weybright* v. *Powell,* 86 Md. 579; *Devecmon* v. *Shaw,* 70 Md. 210 (opinion of ALVEY, J.)

There is no good reason to be assigned, why the testator should be governed by a different purpose, when in the same manner he devised the remaining portion of Hampton, unto his three sons naming them.    He must have intended to give to them a vested estate as he had to John liable to be divested as to the respective individuals by his death, without having married and being intestate.    And it is perfectly clear also that when he provides that the share so divested shall pass to *all* of his "surviving children," he refers to those children who may be in existence at the time such death occurs.

Thus it appears that the intent of the testator, at least with reference to his real estate, was to confer upon his sons vested estates, liable however to be defeated upon their respective deaths without male issue. Can it reasonably be supposed he had a different intent with respect to his personalty, in the absence of language indicating clearly that he did? With respect to the personal property, the testator directed it all to be assessed at the death or remarriage of his widow, and bequeathed half the amount or sum of such assessment to John, and in the event of his death without issue male, to Charles, and in default of issue male to his next son, &c., precisely as he had previously devised his Hampton House; the residue, to "all his surviving children (except his eldest surviving son or such son as may take the other half of the personal estate), and unto the issue female of such of his sons who may have died previous to the death or remarriage of his wife. It has been shown, it was the intention of the testator that John should take a vested estate in the property devised and bequeathed to him; and if this be correct, he must have intended that his estate should vest in the persons named to take first, not at the termination of the widow's life estate, but at the period of his death, and therefore intended the words "surviving children" in this clause should mean, surviving at the period of his death. If John survived his father he would take a vested interest. But if he had died before his father the son who would take next in the event of John's death without male issue, would be he who was the eldest son at the testator's death. If the words "to all his surviving children" were the entire provision, there would be little difficulty, for the case would be the familiar one where after a life estate the remainder is bequeathed to the testator's children, it is held that the children take a vested estate at the testator's death. In *Dulaney* v. *Middleton*, 72 Md. 67, where the property was to be held in trust for a separate use for the term of the legatee's natural life, and after her death to the use of her children, &c., it was held the interest of the second takers, the children, was a vested interest. To the same effect is *Tayloe* v. *Mosher*, 29

Md. 443, and *Cox* v. *Handy, supra.* So here, in accordance with this well-established rule, the bequest to "my surviving sons" at the termination of the life estate, creates a vested estate. But the testator proceeds, to "all my surviving sons," &c., "and unto the issue female of such of my said son or sons who may have died previous to the demise" or remarriage, "of my said wife." That is, if the son shall have died before the period of distribution, that is, at any time before the death or remarriage of the widow," the female issue shall take, at the death of the testator, if the son be then not surviving, or whenever thereafter before the period of distribution that event shall happen. The clause is a substitution of the first clause, indicating that in the event of the sons death before the period of distribution, the issue female shall take. The succeeding clause "I do hereby appoint them my surviving children and the issue female who may have died previous, &c.," may therefore be regarded as an executory limitation, with the effect, that while the son takes a vested interest, it is liable to become divested upon his death leaving issue female. If this were an incorrect interpretation of this clause, and this clause be regarded as indicating an intention of the testator to refer the period of vesting to the time of the distribution of the estate, the clause would be out of harmony with the general scheme of the will, and the necessary construction of all of its other provisions. A son who died leaving no female issue before the termination of Mrs. Ridgely's life estate, could take no interest, and his male issue if he left any would be entirely excluded. And there would be a possible hypothesis of fact, under which there would be an entire intestacy of one-half of the testator's personal estate; as for instance, if all of his children except John had died before the death or remarriage of their mother, leaving no female children. A construction that will produce such results as these, improbable though they may be, a Court will struggle against, especially if it be not in harmony with the general intent of the testator. *Johnson* v. *Safe Dep. & Trust Co.,* 79 Md. 21.

It follows from the views expressed, that the children of the

testator, living at the time of his death, took a vested estate in their respective shares of the residuary personalty, defeasible however as to the share of any son, upon his death in the lifetime of the widow or before her remarriage, but leaving female issue surviving him.   Howard died before his mother, but left no issue male or female.   There being no female issue, the contingency upon which the divestiture of his personal estate depended never happened, and his personal estate therefore passed on his death to his legal representatives.

For the same reasons it must also be held that Charles Ridgely took a vested interest at the death of his father in the residuary personal estate; and Charles having died in 1873 without issue male or female, Howard thereupon became entitled to a one-sixth part thereof, which has now passed to his personal representative.

It follows from what has been said that the decree of the lower Court must be reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

> *Decree reversed and cause remanded for further proceedings in accordance with the views herein expressed; costs to be paid out of the estate.*

(Decided January 13th, 1905.)