# HARRIET E. NOBLE et al. *vs.* CLOTWORTHY BIRNIE, Trustee.

*Devise and Legacy—Estate Vested Subject to be Divested—Appointment of Trustee to Sell Land.*

All of a testator's real estate was devised to his executors in trust for his daughters exclusively, and his personal property was bequeathed in trust for the benefit of one son and testator's daughters, each of the latter to take their distributive portion upon marriage. The will provided that "on the death or marriage of all my daughters, then the real estate * * * shall be sold and the proceeds equally divided among all my daughters that may then be alive and the children of such as may have died." None of the testator's daughters ever married. One of them died intestate as to the real estate held in trust and the other five left wills devising their interest in the same to the children of their brothers. *Held*, that each of the daughters took a vested estate in one-sixth of the real property subject to be divested at the time fixed for distribution, *i. e.* when all the daughters were either dead or married, if there were then living married daughters or the children of deceased daughters, and that since this contingency did not occur, but all the daughters died unmarried, there was no divestiture but the interest of each daughter remained vested in her until her death, and then passed by the wills of those dying testate and to the heirs of her who died intestate.

When the persons authorized by a will to sell real estate upon the occurrence of a certain event are dead when that time arrives, a Court of equity has jurisdiction to appoint a trustee with power of sale under Code, Art. 16, sec. 90.

*Decided February 14th, 1907.*

Appeal from the Circuit Court for Carroll County (JONES and THOMAS, JJ.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER and BURKE, JJ.

*Guy W. Steele*, for the appellants.

*Benjamin F. Crouse* and *Francis Neal Parke* (with whom were *Jas. A. C. Bond* and *John M. Roberts* on the brief), for the appellee.

BOYD, J., delivered the opinion of the Court.

This case involves the construction of the will of Clotworthy Birnie which was executed in March, 1845, shortly before his death. He left a few articles of personal property to his son, Clotworthy, stating that he had received his full portion of the estate, and his pistols and bullet moulds to his son, Rogers, and then gave and devised to his daughter, Margaret, as executrix, and to his son, Rogers, as executor, and to the survivor of them, etc., *all* his real, personal and mixed estate (except the articles bequeathed to his son), subject to the payment of his debts and funeral expenses, "*in trust* for the following purpose, that is to say, My real estate for the benefit of my daughters exclusively (my son Rogers having had his portion of my real estate), and my personal property for the use and benefit of my daughters and my son Rogers, his share of my personal property to be ascertained by appraisement and valuation at my death, and so also each of my daughters, if they shall marry, are to take *their respective distributive portions*, in the same way, of personal property on their marriage."

He then directed his executors to sell, as soon as may be after his death, so much of his real estate as would be necessary to pay his debts, and as much more as they might think necessary, "preserving my present dwelling house, and offices, and three hundred acres of land contiguous thereto, a residence for my unmarried daughters, and invest the proceeds of such sales as they may think best and apply the interest arising from such investment in the manner hereinbefore directed for the benefit of my daughters."

Immediately following is this clause: "And on the death or marriage of all my daughters, then the real estate that may remain unsold and all the remaining personal estate shall be sold, and the proceds equally divided among all my daughters that may then be alive and the children of such as may have died, such children taking their equal portion of what their deceased parents would have been entitled to."

The testator left surviving him the two sons above named and six daughters—none of whom ever married. His

daughter, Margaret, died in 1878, Hester in 1885, Ellen in 1890, Rose in 1893, Ann in 1894 and Frances in 1904. His son, Clotworthy, died in 1882 leaving four children—two of whom afterwards died, one leaving a child and the other leaving three children. Rogers died in 1890, leaving eight children one of whom afterwards died leaving two sons. Margaret died intestate as to the trust estate. The other five daughters left wills in which each left "any disposable interest in the trust funds, real or personal," to all the grandchildren of her father "to take in equal shares *per capita*," and if any be dead leaving issue, then the share of each to go to his or her issue in equal shares *per stirpes*.

The trust estate consists of $26,863.88 of personal securities and a little over 393 acres of unsold land. The securities are the proceeds of sales of real estate, as the personal property left by the testator was not sufficient to pay his debts.

1. The lower Court held that "each of the daughters of the testator became vested with an absolute equitable estate in one undivided sixth part in the property that was made the subject of the trust created for their benefit and as each one died her share passed subject to the trust to her legal representatives, or to her devisees or legatees, as the case might be, if she left a will."

There can be no doubt that the language used in the first part of the will creating the trust was sufficient to give a vested equitable estate to each of the six daughters, if it stood alone. It says: "My real estate for the benefit of my daughters exclusively * * * and my personal property for the use and benefit of my daughters and my son Rogers." The testator assigned good and valid reasons for excluding his sons from participating in the real estate, as is shown above, and, although he gave his son Rogers an interest in his personal property, it was of no value because his debts amounted to moie than the personalty. It is evident that the testator was specially interested in providing for his daughters, and, although it is doubtless true that he did not anticipate that all of them would die unmarrid, they were unmarried when he

made his will and he made special provision for them by re-
quiring his executors to preserve his "dwelling-house and
offices and three hundred acres of land contiguous thereto, a
residence for my unmarried daughters." The last clause in
the will reflecting on this question, which is quoted above, is
the one which creates a doubt as to the meaning of the tes-
tator. He there directs that "on the death or marriage of all
my daughters" all the remaining property be sold, "and the
proceeds equally divided among all my daughters that *may
then be alive* and the children of such as may have died," etc.
As none of the daughters married, there were no children of
a deceased daughter or daughters and of course there was no
daughter alive when the time arrived for the distribution of
the estate. But is this clause of the will to be so construed
as to create an intestacy of the whole estate in remainder, or
is it to be construed to mean that the testator intended to give
a vested estate to each of his six daughters, by the previous
clause, which would be divested if there were surviving
daughters or children of a daughter or daughters, when the
time arrived for distribution—that is to say, when all the
daughters were either dead or married? It must be remem-
bered that the testator left *all* of his real property to his execu-
tors *in trust* for the benefit of his daughters exclusively and all
his personal property to them *in trust* for the benefit of his
daughters and his son Rogers. The share of Rogers was to
be ascertained at the death of the testator and each daughter
that married was to take her share of the personal property
on her marriage. Although there was in fact no personal
property remaining after the payment of the debts, that pro-
vision reflects upon the intention of the testator and shows
very clearly that he did not intend the vesting of the personal
property to be postponed until all his daughters were dead
or married. He said that "each of my daughters, if they
shall marry, are to take *their respective distributive portions*, in
the same way, of personal property on their marriage"—recog-
nizing that each of them *had a portion* before the time fixed
for the final distribution of the estate. While the will makes

no provision for the payment of any proceeds of sales of real estate to the daughters before the final distribution, the real estate was devised to the executors for the benefit of the daughters, just as the personal property was for the use and benefit of the daughters and Rogers, and there is nothing in the will from which it can be inferred that the testator intended to leave a vested equitable interest in the personalty to the daughters, but did not intend to leave them such an interest in the real property. What we have referred to above makes it quite certain that he intended their equitable interests in the personal property to be vested, and, that being so, there could be no justification in holding otherwise as to the realty, as both kinds of property are included in the same clause, are subject to the same trust and similar language is used in referring to them.

When the whole will is considered, as it must be, it seems clear that the proper construction to be placed on it is that each of the six daughters took a vested equitable estate in an undivided sixth part of the property, which was liable to be divested from those who died unmarried (if one or more married) when all were either dead or married, provided one or more of such married daughters, or the child or children of a deceased daughter or daughters, were then living. And inasmuch as all died unmarried the conditions which would have divested those interests never existed, and hence there was no divestiture, and the one-sixth interest remained vested in each of the six daughters until her death, and then passed by the wills of those leaving wills disposing of their interests, or to the legal representatives of such as did not. Of course, they were subject to the trust until the death of the last one. That construction not only accords with the established rules of law, which favor early vesting of estates and avoid intestacy, but it is sustained by the authorities. In 2 *Williams on Executors*, sec. 1137, this illustration is given : "So where there was a bequest to A of the interests and dividends of personal property for life, and then to be divided equally amongst her three children, *or such of them as should be living at her death,*

and the children *all* died in the lifetime of the tenant for life, it was held that they took vested interests, transmissible to their representatives; for the vested interests first given by the will were, by the form of the expression, only defeated in case there should be some or one, and not all, of the children living at the mother's death; but that event did not happen, for there was not one child then living." There have been many decisions by this Court holding that the estates in controversy were vested, but were liable to be divested under certain circumstances, but we will only cite a few of the recent ones which are more or less applicable to some of the questions involved here and refer to the earlier cases. *In re Roger's Trust Estate*, 97 Md. 674; *Ridgely* v. *Ridgely*, 100 Md. 230; *Roberts* v. *Roberts*, 102 Md. 131; *Daughters* v. *Lynch*, 93 Md. 305.

2. The only other question for us to consider is, whether that part of the decree is correct which authorized and directed the appellee to sell the property, held by him under the provisions of the trust, and to make the distribution under the order of the Court. The will named the testator's daughter Margaret, executrix, and his son Rogers, executor, and described them as such throughout. In the clause in which the testator provided for the sale of his property that remained unsold and the distribution of the proceeds after the death or marriage of all his daughters, he did not state in terms who was to make the sale, but it is manifest that he intended his daughter and son or the survivor of them, to do so. The next clause says: "I hereby authorize my said executrix and executor or the survivor to make title for whatever portions of my real estate may sell to the purchasers thereof." The record does not disclose the proceedings as fully as it might have done, but it does show that in January, 1886, Rogers Birnie filed in the Circuit Court for Carroll County a petition in which he alleged he was appointed "trustee" jointly with Margaret Birnie, by the will; that she had died on February 19th, 1878, and since then he alone had discharged the trust. It then states that he desired to retire from and resign the trust

and he filed an account of his receipts and disbursements as "trustee." He prayed that the Court would assume jurisdiction, cause notice to be given, and that he be released and discharged as "trustee." An order was passed in pursuance of what is now sec. 229 of Art. 16 of the Code. Rogers Birnie was relieved of the duties of trustee and on March 15th, 1886, the appellee was appointed "trustee" in his place, accepted the trust, gave bond and received the trust funds and estate. It does not appear in the record, and is not necessary to be determined, whether those proceedings were in all respects regular, for it is shown that Rogers Birnie, the surviving executor, died in 1890, and that on July 9th, 1904, after all the daughters of the testator were dead, the appellee filed a petition in the Circuit Court for Carroll County, in which he recited the facts, showing the death of the two executors and of all the daughters, naming the heirs of the two sons of the testator, of which he was one, alleging that all were adults and making all of them parties. He prayed that the will of the testator be construed, that the trust fund be distributed under the direction and control of the Court and for general relief. Some of the heirs answered admitting the allegations and a decree *pro confesso* was passed against the others.

Without undertaking to determine whether the appellee's previous appointment as trustee was in all respects regular, the fact is that he was in the Circuit Court, *as trustee*, accounting there for the trust funds and it is necessary and proper that he state his final account in that Court. The will undoubtedly contemplated that the real estate still unsold, as well as all remaining personal estate, should be sold for the purpose of distribution, when all the daughters were dead or married, and the fact that all died unmarried cannot prevent a sale. Those who now stand in the place of the daughters are entitled to the distribution, as provided for by the will, and there is the same necessity for a sale, in order to carry out the intention of the testator, as there would have been if some of the daughters had married, and were still living, or left children.

Inasmuch as both Rogers and Margaret Birnie are dead it

was necessary that a trustee be appointed to make the sale, if the appellee was not already authorized to do so.   Sec. 90 of Art. 16 of the Code gave the Court below full power to appoint some one for that purpose, and although the petition filed by the appellee does not in terms pray that a trustee be appointed, it does ask that the estate be distributed under the direction and control of the Circuit Court and contains a prayer for general relief.   As the estate cannot be distributed without a sale of the property there can be no question about the right of the lower Court to now authorize the appellee to make the sale, if there be any doubt about his authority under the previous order of the Court. and therefore it is immaterial whether he had that authority or not under that order, as he now has it under the decree appealed from, which the Court was authorized to pass.   In addition to the statute already referred to the cases of *Keplinger* v. *Maccubbin,* 58 Md. 203, and *Wright* v. *Williams,* 93 Md. 66, as well as others cited in the note to sec. 90 of Art. 16 of the Code, show that a Court of equity has jurisdiction over such matters.   It is concurrent with that of the Orphans' Court, when a power of sale is given to executors who afterwards die without completing the trust, and the Court which first assumed jurisdiction is entitled to retain the same.  In this case all the persons interested were made parties to the petition and the allegations and prayers of the petition, together with the evidence taken were sufficient to justify the Court's action.

It follows that there was no error in the decree of the lower Court and it will be affirmed, but we will direct the costs to be paid out of the estate.

> *Decree affirmed, the costs to be paid out*
> *of the estate, and the cause remanded*
> *for further proceedings.*