7 *Buch.* Stout *v.* Cook.

GIDEON L. STOUT, executor, &c.,

*v.*

MARGARET S. COOK et al.

[Decided February 11th, 1910.]

1. The words of a will should generally be given their common and ordinary meaning, unless there is something in the text which requires that a different meaning be given them, but technical rules and common and ordinary meaning may be disregarded if another meaning is observable from the language employed.

2. Testator directed the residue of his estate to be divided among his children, the shares of the daughters to be held in trust during their lives, and, on the death of either daughter, her share to go to her child or children, "and if such daughter shall leave no child, such share shall .be esteemed as part of the residue of my estate, the interest and profits of which to be paid in equal parts to my surviving children."—*Held,* that the words "surviving children" refer to such persons as answer the description at the death of the daughter, the date of distribution, and not at the death of testator.

3. In the construction of wills, the court must ascertain the intention of the testator as expressed by the words used.

4. Testator directed the residue of his estate to be divided into the number of shares that he had children, that the share of each son be given to him absolutely, but that the shares of the daughters be invested for their benefit during their lives, and that on the death of either daughter without leaving any child her share "shall be esteemed as part of the residue of the estate, the interest and profits of which to be paid equally to my surviving children."—*Held,* that the word "surviving" should not be read literally, or changed into "other," but should be held to mean

stirpital succession, so that the share of a daughter deceased without leaving a child would fall back into the residue to be distributed according to the existing *stirpes*.

5. Where there was no law in the state for the adoption of children at the time testator made his will, he could not have had in mind the subsequently adopted child of one of his children in directing that the "child or children" take the parent's share of the residuary estate on distribution under certain conditions.

6. Act of 1877 (*P. L. 1877 p. 126 § 4*), investing an adopted child with the right of inheritance from the adopting parent, does not create in such child capacity to take the share which the deceased adopting parent would have taken under such will, if living.

On final hearing on bill, answer, replication and proofs.

*Mr. Edward M. Colie,* for the complainant.

*Mr. John R. Hardin* (*Mr. Joseph D. Lee,* of the New York bar, with him on the brief), for Margaret S. Cook and others.

*Mr. William J. Magie,* for Thomas H. Stout and others.

*Mr. Mark A. Sullivan* (*Mr. Robert H. Griffin,* of the New York bar, with him on the brief), for Audrey Osborn.

Howell, V. C.

The bill in this case is filed to obtain a construction of the will of John W. Stout, who died in 1861. He left a widow and seven children, among whom was his daughter Augusta, who married one Appleton and who died in December, 1907, without issue. At the time of her death the children of the testator who were living were Gideon L. Stout, one of the complainants, and Thomas Stout, a defendant. The four other children were dead, one of them, Jacob, having died without ever having had issue, but leaving the defendant, Audrey Osborn, whom he had adopted as his daughter in accordance with the laws of the State of New York in 1900. Amelia, Margaret and Abby, three of the children, died, leaving issue, all of whom were made parties defendant to this suit. The litigation arises over the disposition of the share of the testator's estate, the life estate in which had

been enjoyed by Mrs. Appleton. On her death without issue three sets of claimants to the fund have arisen—*first,* her two brothers who actually survived her; *second,* the issue of her three sisters who predeceased her, and *third,* Audrey Osborn, who claims to take as the adopted daughter of Jacob Stout, one of the testator's children.

The paragraph of the will which causes the dispute is as follows:

"Fifth. The whole residue of my estate I order and direct shall be divided into seven equal parts or shares, and to each of my sons, to wit, Jacob, Thomas & Gideon Lee I give and bequeath absolutely and without condition or qualification one full part or share and the remaining four shares of the residue of my estate, I order and direct my executors the survivors or survivor of them, to invest at interest on good landed security, and the interest and profits arising therefrom I direct to be paid from time to time as the same may be received in equal shares or proportions to each of my four daughters, (their respective receipts to be a full discharge for the same) during their respective natural lives, and on the death of either of my said daughters I give and bequeath her share of the said residue of my estate to the child or children of such deceased daughter in equal shares or proportions; and in case such deceased daughter shall leave no child or children such share shall be esteemed as part of the residue of my said estate the interest and profits of which, to be paid in equal proportions to my *surviving* children during their natural lives, and on their respective deaths, the principal to be paid to the child or children of such deceased child; such child or children to take the parent's share, and I do order and direct that any advancements made or moneys loaned to either of my sons in law, and for which I have or hold any evidence in writing, shall be deemed and taken as advancements made to my daughter who is the wife of such son in law, and shall be charged to and deducted from such daughter's share or proportion of my estate herein bequeathed to her."

It will be observed that the general scheme of the will was to provide for the descendants of the testator not equally as amongst the children who survived him, but equally among the *stirpes* or stocks of his issue. As to his sons he provided for an immediate vesting of their shares and for immediate possession thereof. As to the daughters there was a settlement of an equal share upon them during the terms of their respective lives, with remainder to their issue and a devise over in default of issue. The devise over is to those persons whom the testator had in mind when he used the term "surviving children" and

eventually the issue of such surviving children *per stirpes.* The problem is to determine who were meant by the testator when he used the term "surviving children."

An examination of the decided cases shows that the phrase or its equivalent has been very often used in wills and has been very often the subject of litigation. One of the English judges remarked that the cases on the subject were so numerous and so conflicting that he did not think the wit of man could reconcile them. This is owing to the fact that it is difficult to frame a general rule according to which all cases involving the construction of particular words and phrases may be decided. There is sufficient variation in the wording of wills to account for the different manner in which the words which are in dispute in this case have been construed. Lord Halsbury said in *Inderwick* v. *Tatchell (1903), A. C. 120; 72 L. J. Ch. 393:* "I confess I approach the interpretation of a will with the greatest possible hesitation as to adopting any supposed fixed rule for its construction. If I can read the language of the instrument in its ordinary and natural sense I do not want any rule of construction; and if I cannot, then I think one must read the whole instrument as well as one can, and conclude what really its effect is intended to be by looking at the instrument as a whole. * * * I so far go with the contention of the appellants here, that I think it quite possible—nay, I may go further and say I think it is probable—that if the testator had contemplated the particular event that has happened in this case he would have provided for it. But with that single observation I am not at liberty, because an event has happened which I think has not been provided for, to conjecture what the testator would have provided if he had thought of it beforehand. I am not at liberty to disregard the application of the ordinary rule of construction of every document—namely, that you must look at the whole document, and, if you can, you must read the words according to their natural and reasonable meaning."

I may say in passing that this idea was given expression to in a case in which the facts were quite similar to those in the case in hand, the prime difference being that the devise over was to "their *then* surviving brothers and sisters."

Notwithstanding the fact that each will in the matter of construction must stand upon its own footing, many attempts have been made by the courts and text writers to formulate a rule which should have a more or less general application touching the construction of the words in question. It must be admitted that generally these words must be given their common ordinary meaning unless there is something in the text which requires that a different meaning should be given to them. This is so held in *Holcomb* v. *Lake, 24 N. J. Law (4 Zab.) 686,* and in other cases cited in the briefs before me, and also so held very strongly in the several opinions delivered in the case of *Inderwick* v. *Tatchell* above cited. I think it is equally clear that the words in question refer to such persons as shall answer the description at the time of the distribution of the fund and not at the death of the testator.

*Ashurst* v. *Potter, 53 N. J. Eq. (8 Dick.) 608; Slack* v. *Bird, 23 N. J. Eq. (8 C. E. Gr.) 238; Dutton* v. *Paugh, 45 N. J. Eq. (18 Stew.) 426, affirmed, sub nom.; Jones* v. *Jones, 46 N. J. Eq. (1 Dick.) 554.* The New York and Massachusetts cases are not a safe guide on this point. They seem to favor another view. See, also, *Cripps* v. *Wolcott, 4 Mad. 12,* and *In re Duke, 16 C. D. 112.*

We are, therefore, to inquire who were the persons who answer the description of surviving children at the date of the death of Mrs. Appleton. Mr. Jarman (*3 Jarm. Wills 547*) states a rule of construction which Mrs. Cook and those belonging to her class urge should be applied to this case. It is expressed in these words:

"Where a gift to the 'survivors' of several legatees, limited to take place on a certain event (as the death of any of them under age or without issue), is followed by a gift over, not if there should be no survivor at the time the event happens, but if that event should happen to every one of the legatees; (as if all die under age or without issue) 'survivors' is read 'others.' From the contingent gift over of the whole in a mass it is inferred that the testator meant the legatees to take it amongst them in every other contingency which can only be secured by means of cross limitations between them,"

citing for his authority *Doe* v. *Wainewright, 5 T. R. 427; Cole* v. *Sewell, 4 D. & W. 1; 2 H. L. Cas. 186,* and *Wilmot* v. *Wil-*

*mot, 8 Ves. 10.* A much better expressed statement is found in
*2 Wms. Ex. 1332.* The writer says:

"The word 'surviving' has been construed 'other' to give effect to the
apparent intention. Thus where a fund is given between a class or num-
ber of persons as tenants in common for life, with interest in the nature
of remainders to their children respectively, and a valid provision is
made that in the event of the death and failure of issue of any of the
original takers, the share of the original taker or takers so circum-
stanced shall go to the survivors or survivor of them, the words sur-
vivors or survivor may, if the scheme of the will requires it, be con-
sidered as an expression of contrast used for the purpose of distinguish-
ing the takers not so circumstanced, and therefore as meaning 'others or
other.' But the word 'survivor' must receive its natural construction and
not be read as meaning 'other' unless the nature of the disposition itself,
or the context of the will, renders a departure necessary to effectuate
the apparent intention of the testator."

Watson, in his *Compendium of Equity (vol. 2) p. 1222,* ex-
tracts this from the cases. When following the limitation or gift
to the survivor or survivors, and if any should die without issue or
without attaining the age prescribed, there is an ultimate gift
over if all die without issue or without attaining the prescribed
age, survivors or survivor will be construed as others or other,
letting in the issue of deceased children to share from the sur-
viving children.

In *Waite* v. *Littlewood (1873), 8 Ch. App. 70; 42 L. J. Ch.
216,* the testator directed one-sixth of a fund to be held in trust
for each of his six daughters for life with remainder for the
benefit of their respective children, with a proviso that if any
of them should die without leaving issue who should live to
attain a vested interest, her share should be in trust for his sur-
viving daughters in equal shares during their respective lives
with remainder for their respective children *per stirpes.* The
will contained a gift over in case none of the testator's daughters
should have a child who should live to attain a vested interest.
One of the daughters died leaving three sisters and children of
two deceased sisters her surviving and without leaving any issue
of her own. Held by Lord Selborne, L. C., that the children of
the deceased sisters were entitled to participate in the share to
which the daughter having the life estate had been entitled, and
that the words "surviving daughters" must be construed to mean

daughters whose *stirpes* were surviving. It will be observed on reading the case that the lord chancellor laid stress upon the devise over in case of the death of a daughter without issue, and that he favored the view that the words in question referred to a survival of the *stirpes* or stocks rather than to a survival of the individuals. The devise over indicated to his mind that the testator did not intend to die intestate as to any of the shares. This opinion is commented on by Cotton, L. J., in *Benn* v. *Benn, 29 C. D. 839,* in which he says that Lord Selborne relied upon the gife over as the main reason for his judgment in that case.

*In re Palmer settlements, L. R. 19 Eq. 320; 44 L. J. Ch. 247 (1875),* there was a settlement executed by two sisters by which the income of a trust fund was made payable to them equally during their joint lives, and after the death of one of them to the survivor for her life, and if either of them should die leaving children to pay one-half to such children, and if either should die without leaving children to pay that half to the children of the survivor, but if both sisters should die without issue then there was a gift over. The one first dying left children; the survivor of the two left none. It was held that the moiety which represented the share of the survivor passed to the children of the one first dying. The opinion was by Malins, V. C., who held that in this case the word "survivor" meant and could mean nothing but "other." In *Wake* v. *Varah (1836), 2 C. D. 348; 45 L. J. Ch. 533,* the testator gave the residue of his estate to trustees in trust to pay and divide the income equally among his three children during their respective lives, and after the death of each child the share of the fund to the income of which the deceased child was entitled for life was to be in trust for his or her issue, but

"in case and so often as, any of my said three children shall die without leaving issue, the said trustees or trustee for the time being shall stand seized and possessed of the share to which such child for the time being dying without leaving issue as aforesaid shall become entitled during his or her life, as well originally under the trusts aforesaid as by survivorship or accruer under this present clause, in trust for the survivors or survivor of my said children during their, his or her respective life or lives, and in equal shares if more than one ;"

with a gift over in case all his children should die without leaving issue.

The court of appeals (Baggalley, James and Cleasby) held to the opinion of Lord Selborne in *Waite* v. *Littlewood, supra,* and *Doe* v. *Wainewright, supra,* and adjudged that the issue of the second child, although she was not the survivor, became entitled on the death of the third to the whole of the fund. Vice-Chancellor Hall, from whose judgment the appeal was taken, and whose opinion was affirmed, seems to have relied largely upon the fact that there was a gift over, indicating that the testator had in mind the complete devolution of the title under the will, and that there should be no intestacy.

The next case in point of time was *Beckwith* v. *Beckwith (1877), 46 L. J. Ch. 97,* in which the court of appeals (James, Baggalley and Bramwell) declined to follow *Wake* v. *Varah* and *Waite* v. *Littlewood.* The testator in that case directed his trustees to invest a fund for the benefit of his five daughters, and during the life of each to pay to her the income of a share and to hold the same in trust for her children, but in case there should be no child of that daughter who should attain a vested interest the share should accrue to his other daughters or other daughter surviving in equal shares. The will contained no gift over in the event of all the daughters dying without issue. It was held that the child of the daughter who died first took no interest in the share of the daughter who died next, the reason being that the testator did not provide against intestacy by a gift over, and that, therefore, the word "survivor" should be used in its common ordinary sense. A notable case is *Lucena* v. *Lucena (1878), 7 C. D. 255; 47 L. J. Ch. 203;* its facts are almost identical with those in the case at bar. There the testator divided the residuary estate into six shares and provided for the transfer to the sons of immediate title to and possession of their shares, but also provided that the shares of the daughters should remain vested in the trustees upon trust for the daughters for life and afterwards for their issue, and that in case the daughters should die without having received their share and without lawful issue, then such shares to be divided equally among his "surviving children" in the same manner as the original shares.

One daughter died in 1876 without issue. At that time one son only was living, and two daughters had died leaving issue. One son had died leaving issue and one without leaving issue. The controversy was over the distribution of the share of the daughter who had died without leaving issue. Sir George Jessel, M. R., held that the words "surviving children" meant children surviving in person, or surviving stocks, and that the share in question must be divided into thirds between the surviving brother and the issue of the two sisters whose shares were settled. This judgment was reversed, but as to the division only, the court of appeal holding that "surviving children" must be construed "other children," and that the share must be divided into fifths amongst the representatives of all the brothers and sisters. It was said that the decision of the master of the rolls was correct in so far as he held that the word "surviving" could not receive its strict construction, but that he was wrong with respect to the ascertainment of the persons who were entitled to portions of the share in question, and it was squarely held that under the circumstances of that case the word "surviving" meant "other."

*In re Walker's Estate (1879), 12 C. D. 205; 48 L. J. Ch. 598,* Vice-Chancellor Hall follows *Waite* v. *Littlewood,* and *Lucena* v. *Lucena,* in a case in which there was a bequest to the testator's children for life with remainder to their respective children with a clause of accruer for the shares of any of the testator's children dying without leaving issue in favor of his surviving children. This was held to carry an accruing share to the then living children of the testator and children of those then dead, even though the will contained no gift over on the death and failure of issue of all the testator's children.

*In re Bilham (1901), 2 Ch. 169; 70 L. J. Ch. 518,* the chancery division applied *Waite* v. *Littlewood* and *Lucena* v. *Lucena* to a case in which a testatrix gave a life interest in a fund to her three daughters with remainder to the children of each, with a gift over on the death of any tenant for life without leaving children to the surviving tenants for their lives, and then to the children of the surviving tenants for life in like manner as their original shares were given, with an ultimate gift over on the failure of issue of all the tenants for life.

11

All the English authorities are collected and discussed in *Harrison* v. *Harrison (1901), 2 Ch. 136; 70 L. J. Ch. 551.* The court of appeal, Cozzens-Hardy, J., quotes from the opinion of Mr. Justice Kay, *In re Bowman, 41 C. D. 525:* "It seems to me that the decisions establish the following propositions—*first,* where the gift is to A, B and C equally for their respective lives, and after the death of any of them, then to his children, but if any die without children, to the survivors for life with remainder to their children, only children of survivors can take under the gift over; *second,* if to similar words there is added a limitation over if all the tenants for life die without children, then the children of a predeceased tenant for life participate in the share of one who dies without children after their parent; *third,* they also participate, although there is no general gift over, where the limitations are to A, B and C equally for their respective lives, and after the death of any to his children, and if any die without children to the surviving tenants for life and their respective children, in the same manner as their original shares."

After a discussion of the authorities the writer concludes that the first two propositions are established by the authorities, but that the third is not warranted by them, and he declined to follow it. There is no reported English case dealing with the subject since *Inderwick* v. *Tatchell, supra,* in 1903, and I leave the discussion of the English cases with the feeling that there is not there any hard and fast rule for our guidance, nor anything which can do more than merely indicate in a general way the direction of the thought of the English judges on the point in question.

I have found no case in our state, nor has the diligence of counsel been more successful, in which the question at issue has been at all discussed. Perhaps but little light can be obtained from a discussion of the cases, because, after all, all the canons of construction fail when opposed by what appears to be the plain intent of the testator. There are some cases in other states to which, perhaps, reference should be made.

In *Carter* v. *Bloodgood, 3 Sand. Ch. 293,* the testator gave the residue of his estate to trustees, they to pay the annual income to his six children equally during their lives, and at the

death of either of them without issue that share to become part
of the residue, the income of which was to be equally divided
among the surviving children, and if either of his children
should die leaving issue that share to be equally divided amongst
those children.   One daughter died without issue; then another
died leaving one child, a son; and then two other daughters
died without issue.   It was there held that the words "surviving"
children meant "other" children, and that the son of the de-
ceased daughter was entitled to a share of the fund.

There is, likewise, the case of *Ridgely* v. *Ridgely* (*1905*), *59
Atl. Rep. 731,* in which the court of appeals of Maryland seems
to have decided the question in favor of the view adopted by
Mrs. Cook, while only two years earlier the case of *Wilson* v.
*Bull* (*1903*), *97 Md. 128,* held under the wording of the will
in question that the words "surviving brothers and sisters" must
be used in their ordinary meaning.

The paramount rule for the construction of testamentary in-
struments is that the court must strive to ascertain the intention
of the testator as expressed by the words of the instrument.
Such intention, if so ascertainable, will prevail over technical
rules and will disregard the common, ordinary meanings of
words and adopt such meaning as can be deduced from the
testator's intention.   This has long been the settled rule in
England and America and needs no citation of authorities for
its support.

I think that anyone who reads this will, not having in mind
any legal rules of construction, but for the purpose of ascertain-
ing the testator's mind, will be struck by the idea that his main
thought was to make an equal division of his estate among the
seven branches of his family, and that in case any specific bene-
ficiary should not attain to title to and possession of a share,
that share should not go out of the family and should not be sub-
ject to intestacy, but quite on the contrary thereof should pass
under the terms of the will to the various stocks whom he had in
mind as specific and direct beneficiaries; and that he did not
mean that the interest of any of the female beneficiaries should
be subject to be finally vested by reason of the chance of mere
survivorship.   How could he have any idea as to who the ultimate

beneficiaries might be, or whether they might be six in number or only one; or in the event of Mrs. Appleton having been the longest liver of his family whether the final vesting of the estate should be subject to that chance only? I therefore think that the testator had in mind perhaps not the actual survival of any particular individual, but a continuance and succession in some way of the stocks designated and appointed by the will, so that the word in question should not be read literally, or changed into "other," but that rather like the determination in some of the English cases it should be held to mean a stirpital succession.

The contention of Thomas H. Stout, and those in the same class with him, leaves out of view the fact that the Appleton share falls back into the residue of the estate; according to their view, it could not go into the residuary estate, but becomes a special trust fund in the custody of the trustees under the will, the income of which cannot be devoted to residuary purposes, but must be distributed to the two surviving brothers for their lives and the capital at their death be distributed to their children, as the term was used by the testator.

It would be doing violence to the ordinary rules of construction to hold that because of the difficulty created by the peculiar wording of this will, the ascertainment of the survivors must be referred to the death of the testator rather than to the period of distribution. I do not think it is necessary to go so far. The testator had, in mind some distribution of the shares which might fall in among people who should answer the description of "surviving children" at the time of the distribution, and it would be unsafe and illogical to use the period of distribution as a date for some purposes of the will and not for all. In other words, I do not see how the period of distribution can be used for the purpose of placing the share in question in the residuary fund and a different period be then employed for its disposition when once it shall have been placed there.

There remains but one other question, that concerns the right of the defendant Audrey Osborn, who claims as adopted daughter of Jacob Stout. The will was dated February 27th, 1861, and the testator died on May 5th, 1861. At that time there was no statute by virtue of which an adoption could take place. The

earliest legislation on this subject is found in the laws of 1877, in an act approved on March 9th of that year. *P. L. 1877 p. 123.* The present law is contained in *P. L. 1902 p. 259.* I do not find any material difference between the two acts. It is quite manifest that the testator did not have in mind the devolution of the title of any portion of his estate on an adopted child of either of his children for the reason that there was no law of this state under which such adoption could be had until 1877, and it appears that there was no law in the State of New York, the place of Jacob Stout's domicile, until 1873, and inasmuch as Audrey Osborn must claim under the will in question, it is plain that her succession to any portion of his estate is quite beyond the testator's intention. The will speaks only of "child or children," which could mean to the mind of the testator only blood relations, and not relations by adoption. To hold in her favor would be to hold that she is within the terms of the will a child, and that, in the face of the fact that Thomas Stout never had any children, and in the face of the other fact, which must be conceded by the allegation of adoption, that she was somebody else's child, and therefore not the child of Jacob Stout. Neither is she Jacob Stout's child by implication of the statute. Section 4 of the act of 1877 provides that a child or children (so adopted) shall be invested with every legal right, privilege, obligation and relation in respect to education, maintenance and the rights of inheritance to real estate or to the distribution of personal estate on the death of such adopting parent or parents as if born to them in lawful wedlock. In other words, such adopted child may inherit from the foster parent, but the adoption shall not operate to create a capacity to take as a child under the will of some other person.

These views lead to the following result—*first,* Audrey Osborn is excluded from any participation in the distribution of the fund in question, and *second,* the Appleton share will be divided into five parts, two of which will be held by the trustee for the benefit of the two surviving sons for their lives, with remainders to their respective issue; and the other three shares will be actually distributed to the issue of the three deceased daughters respectively *per stirpes.*